UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Evelyn Castillo, on behalf of herself and all others similarly situated, | 19-cv-388 (ARR) (PK) |
| Plaintiff, | |
| — against — | **Not for print or electronic publication** |
| The John Gore Organization, Inc., | |
| Defendant. | **Opinion & Order** |

ROSS, United States District Judge:

Plaintiff Evelyn Castillo, purportedly on behalf of a class, is suing The John Gore Organization, Inc., alleging that the defendant's theater unlawfully discriminates on the basis of disability. Her complaint raises claims under Title III of the Americans with Disabilities Act §§ 301–308, 42 U.S.C. §§ 12181–12188 (2018); the New York State Human Rights Law, N.Y. Exec. Law §§ 291–297 (McKinney 2019); the New York State Civil Rights Law, N.Y. Civ. Rights Law §§ 40–41 (McKinney 2019); and the New York City Human Rights Law, N.Y.C., N.Y. Admin. Code §§ 8-102–8-126 (1991), https://www1.nyc.gov/site/cchr/law/text-of-the-law.page. The defendant has moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), claiming that the plaintiff lacks standing. Alternatively, the defendant has moved to dismiss for failure to state a claim pursuant to Rule 12(b)(6). For the reasons set forth below, the defendant's motion to dismiss for lack of standing is granted. Because I lack subject matter jurisdiction, I do not decide whether the plaintiff has failed to state a claim.

## BACKGROUND

The plaintiff, Evelyn Castillo, alleges that she has diabetes mellitus, a disability under the

Americans with Disabilities Act ("ADA"). Compl. ¶¶ 3, 21, ECF No. 1. The defendant, the John Gore Organization, owns and operates the Charles Playhouse, a theater in Boston, Massachusetts. *Id.* at ¶¶ 1, 14, 25. In or around December 2018, from Kings County, New York—where she resides—the plaintiff visited the defendant's website because she "intended to buy tickets to attend" a "concert" there. *Id.* at ¶¶ 12, 17, 21, 24.[1] However, the plaintiff "did not book a ticket" after seeing on the defendant's website that the defendant had a policy prohibiting patrons from bringing outside food into the theater. *Id.* at ¶ 12; *see* Pl.'s Ex. A at 2, ECF No. 7-1 ("Ex. A"). Because she has diabetes, the plaintiff must have specific types of snacks with her at all times, as her blood sugar can drop suddenly, and she must immediately eat an appropriate food item to stabilize it. *See* Compl. ¶ 21. Thus, the defendant's policy banning outside food from its theater deterred the plaintiff from visiting the theater. *See id.* at ¶¶ 24, 46–47.

The plaintiff claims that she "intends to take advantage of the facilities offered by Defendant in the future once the access barriers are remedied" and that she "intends to attend a similar event at the [theater] as soon as Defendant fixes its discriminatory policies." *Id.* at ¶¶ 12, 24. However, she does not claim that she has ever visited the defendant's theater—or Boston—in the past. In fact, she claims that she "did not attempt to attend an event" at the theater "because she understood Defendant's discriminatory policy and knew that such an attempt would be futile." *Id.* at ¶ 47.

According to the defendant, in December 2018, its website's homepage contained an "accessibility" policy that invited visitors to contact the theater about any accessibility concerns. Spry Decl. ¶¶ 7–8, ECF No. 25. Specifically, that policy stated that "[t]he Charles Playhouse is

---

[1] The defendant notes that the performance that the plaintiff alleges she intended to see was a play and not a concert. Def.'s Mem. of Law in Supp. of Mot. to Dismiss 7 n.8, ECF No. 20 ("Def.'s Mem.").

accessible to all patrons. Guests with accessibility questions or who require additional assistance may email the Playhouse directly . . . or call the House Manager . . . ." Def.'s Ex. 4, ECF No. 25-4 ("Ex. 4"). It also provided an email address and phone number for such accessibility questions or requests. *See id.* It further provided more specific accessibility information for wheelchair users and individuals with visual impairments. *See id.* The website's homepage also contained a "code of conduct" that included a policy prohibiting "outside food or beverage[.]" Spry Decl. ¶¶ 6, 10; Def.'s Ex. 6, ECF No. 25-6 ("Ex. 6"). All of the website's homepage content—including the accessibility policy and the code of conduct—appeared on one page. Spry Decl. ¶ 6. The defendant sequenced its website content such that before reaching the policy prohibiting outside food, a website user must have first scrolled past the theater's accessibility policy. *Id.* at ¶¶ 7, 10. Between December 2018 and at least September 2019, when the defendant's employee David Spry submitted the latest declaration in connection with this case, "the substantive content, language and sequencing of all relevant portions" of the defendant's website "have remained the same," although the defendant migrated its website to a new platform for aesthetic reasons in March 2019. *See id.* at ¶¶ 4–5.

The plaintiff claims that when she accessed the defendant's website in or around December 2018, she encountered the portion of the website prohibiting outside food, *see, e.g.*, Compl. ¶ 24, but she does not claim to have contacted the theater to ask a question about accessibility or to request assistance.

In January 2019, the plaintiff filed her complaint against the defendant, bringing claims under the ADA and related New York State and City laws. *See* Compl. ¶¶ 54–113. She purports to be bringing her claims as a class action on behalf of "all legally metabolically-disabled individuals in the United States who have attempted to access the [Charles Playhouse] and as a

result have been denied access to the enjoyment of goods and services offered in the [Charles Playhouse] during the relevant statutory period." *Id.* at ¶ 27. She seeks injunctive and declaratory relief, as well as compensatory damages. *Id.* at ¶¶ 114–18. The defendant moved to dismiss for lack of constitutional standing pursuant to Rule 12(b)(1), *see* Fed. R. Civ. P. 12(b)(1), and for failure to state a claim pursuant to Rule 12(b)(6), Fed. R. Civ. P. 12(b)(6). *See* Def.'s Mem. 2–3, ECF No. 20.

## DISCUSSION

Article III of the United States Constitution limits the jurisdiction of the federal courts so that they may hear only "Cases" and "Controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). In order for a justiciable case or controversy to exist, a plaintiff must satisfy the three requirements of constitutional standing. *See id.* at 560–61. "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 560 (internal citations omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Second, the plaintiff must show "a causal connection between the injury and the conduct complained of . . . ." *Lujan*, 504 U.S. at 560 (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). Third, it must be likely that a favorable judicial decision will redress the injury. *Lujan*, 504 U.S. at 561 (citing *Simon*, 426 U.S. at 38, 43). The parties in this case focus their arguments on the first element: the existence of an injury in fact.[2]

When assessing claims under the ADA, the United States Court of Appeals for the Second Circuit has found constitutional standing, and therefore injury in fact, when:

---

[2] I must evaluate standing as of "the time the complaint is filed." *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 167 (S.D.N.Y. 2006) (citing *Robidoux v. Celani*, 987 F.2d 931, 938 (2d Cir. 1993)).

> (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendant['s establishment] to plaintiff's home, that plaintiff intended to return to the subject location.

*Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2d Cir. 2013) (citing *Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008) (per curiam)).

Courts in the Second Circuit have expanded upon the first and third elements of this test. First, "deterrence constitutes an injury under the ADA . . . ." *Kreisler*, 731 F.3d at 188. Thus, if a plaintiff has not "personally encounter[ed]" a barrier to access, she has nonetheless suffered an injury if she had "actual knowledge of the barrier complained of and has been deterred from visiting the public accommodation because of that barrier." *Perdum v. Forest City Ratner Cos.*, 174 F. Supp. 3d 706, 714–15 (E.D.N.Y. 2016) (quoting *Panzica v. Mas-Maz, Inc.*, No. CV-05-2595(ARL), 2007 WL 1732123, at *3 (E.D.N.Y. June 11, 2007)), *aff'd* 677 F. App'x 2 (2d Cir. 2017) (summary order). Some courts have anchored this same test in the text of the ADA, which states that a person with a disability does not need "to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions." 42 U.S.C. § 12188(a)(1); *see Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 255 (S.D.N.Y. 2018) ("To plausibly demonstrate the first element of standing, injury, an individual with a disability is not required to 'engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions.'" (quoting 42 U.S.C. § 12188(a)(1))); *Access 4 All*, 458 F. Supp. 2d at 167–68 n.3 (S.D.N.Y. 2006) (linking requirement that ADA plaintiff have awareness of discriminatory conditions to futile gesture provision of statute); *Small v. Gen. Nutrition Cos., Inc.*, 388 F. Supp. 2d 83, 87 (E.D.N.Y. 2005) ("Although, in the context of Title III of the ADA, plaintiffs need not engage in the 'futile

gesture' of visiting a building containing known barriers that the owner has no intention of remedying, *see* 42 U.S.C. § 12188(a)(1), they must at least prove actual knowledge of the barriers and show that they would visit the building in the imminent future but for those barriers." (quoting *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000))).[3]

As for the third element of constitutional standing in ADA cases—that it must be reasonable to infer that the plaintiff intended to return to the subject location—one court in this district has linked the requirement that the plaintiff intended to return to the constitutional requirement that an injury in fact be imminent, rather than conjectural or hypothetical. *See Feltzin v. Stone Equities, LLC*, No. CV 16-6457 (SJF) (AKT), 2018 WL 1115135, at *10–*11 (E.D.N.Y. Feb. 8, 2018); *see also Feltzin v. Stone Equities, LLC*, No. 16-CV-6457 (SJF)(AKT), 2018 WL 1114682, at *1 (E.D.N.Y. Feb. 26, 2018) (adopting Magistrate Judge's Report & Recommendation in its entirety). While there is no precise degree of likelihood of return that is necessary to show imminence, the following factors are relevant: "(1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." *Stone Equities*, 2018 WL 1115135, at *11 (quoting *Shariff v. Channel Realty of Queens, LLC*, No. 11–CV–1499 (DLI)(VVP), 2013 WL 5519978, at *3 (E.D.N.Y. Sept. 30, 2013)). Relatedly, a plaintiff "seeking injunctive relief must also prove that the identified injury in

---

[3] In *Kreisler*, the Second Circuit did not explicitly ground its deterrence theory in the ADA's "futile gesture" provision. However, it did explicitly adopt the Ninth Circuit's ruling in *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133 (9th Cir. 2002). *See Kreisler*, 731 F.3d at 188 ("[W]e now adopt the Ninth Circuit's ruling in *Pickern* and hold that [deterrence constitutes an injury under the ADA]." (citing *Pickern*, 293 F.3d at 1137–38)). In *Pickern*, the Ninth Circuit held "that when a plaintiff who is disabled within the meaning of the ADA has actual knowledge of illegal barriers at a public accommodation to which he or she desires access, that plaintiff need not engage in the 'futile gesture' of attempting to gain access in order to show actual injury . . . ." 293 F.3d at 1135.

6

fact presents a 'real and immediate threat of repeated injury.'" *Kreisler*, 731 F.3d at 187 (citing *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004)); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)).

Finally, because the elements of constitutional standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case," the plaintiff must support "each element" of standing "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (quoting *Lujan*, 504 U.S. at 561). A Rule 12(b)(1) motion to dismiss "may be either facial or fact-based." *Carter*, 822 F.3d at 56. "When [a] Rule 12(b)(1) motion is facial, [it is] based solely on the allegations of the complaint . . . and [the] exhibits attached to [the complaint]." *Id.*[4] The district court must determine whether the complaint "allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Id.* (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). When a Rule 12(b)(1) motion is fact-based, the defendant proffers evidence, and the plaintiff may come forward with her own evidence to controvert the defendant's evidence. *See Carter*, 822 F.3d at 57. However, the plaintiff may rely solely on the complaint if the defendant's evidence "does not contradict plausible allegations that are themselves sufficient to show standing." *Id.* In this case, the defendant has proffered authenticated exhibits as evidence,

---

[4] "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (internal citations omitted) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

and the plaintiff has not come forward with her own evidence to controvert these exhibits.[5] Thus, I treat the defendant's motion as fact-based and the defendant's proffered facts as undisputed.

    **I.**    **The plaintiff does not have standing under the ADA.**

To allege standing under *Kreisler*, the plaintiff must allege (1) a "past injury under the ADA"; (2) that "it was reasonable to infer that the discriminatory treatment would continue"; and (3) that "it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendant['s establishment] to plaintiff's home, that plaintiff intended to return to the subject location." 731 F.3d at 187–88. The plaintiff does not plausibly allege any of these elements, and the defendant's evidence shows that the plaintiff has not, in fact, satisfied them. I will address each element in turn.

First, the plaintiff does not plausibly allege a past injury under the ADA. She does not allege that she ever visited the Charles Playhouse or that the defendant physically barred her from entering. Instead, she alleges that "[i]n or around December 2018," she "intended to attend" a "concert" at the theater and that "she did not book a ticket" after seeing the defendant's policy prohibiting outside food. Compl. ¶¶ 12, 24. Thus, the only injury that the plaintiff could have suffered is deterrence from visiting the theater. *See Kreisler*, 731 F.3d at 188. Indeed, the plaintiff states that she was "deterred" from visiting the theater, Compl. ¶ 24, and that she did not attempt to visit the theater because she "knew that such an attempt would be futile," Compl. ¶ 47.

However, to have suffered an injury under the deterrence theory, the plaintiff must have had actual knowledge of a barrier to access. *See Lowell*, 352 F. Supp. 3d at 255 (stating that to establish injury, plaintiffs are not required to engage in futile gestures if they have actual notice of

---

[5] Plaintiff's Exhibit A was not submitted as authenticated evidence but rather was attached to her complaint.

ADA non-compliance); *Perdum*, 174 F. Supp. 3d at 714–15 (stating that injury in fact under ADA consists of either personally encountering barrier to access or having actual knowledge of barrier and being deterred from visiting the public accommodation); *see also Kreisler*, 731 F.3d at 186, 188 (finding concrete and particularized injury where plaintiff physically passed by public accommodation, saw physical barrier to access, and alleged he was deterred from trying to enter). Here, the plaintiff could not have had actual knowledge of a barrier to access at the Charles Playhouse, despite her claim to the contrary. *See* Compl. ¶ 46. As the undisputed record shows, in December 2018, the theater's website homepage content appeared on one page. Spry Decl. ¶ 6. The homepage content was sequenced such that before even reaching the theater's policy prohibiting "outside food or beverage," Ex. 6, a website user must have first scrolled past the theater's accessibility policy, *see* Spry Decl. ¶ 7. That policy stated that "[t]he Charles Playhouse is accessible to all patrons. Guests with accessibility questions or who require additional assistance may email the Playhouse directly . . . or call the House Manager . . . ." Ex. 4. It also provided an email address and phone number for such accessibility questions or requests. *See id.* The plaintiff makes no claim that she contacted the theater, as the defendant's website invited her to do, and was denied permission to bring outside food. Accordingly, she could not have had actual knowledge that the defendant's outside-food prohibition would bar her access to the theater, as the defendant's website made it abundantly clear that there was at least a possibility of obtaining an accommodation. *Cf. Lowell*, 352 F. Supp. 3d at 255–56 (finding actual knowledge of barrier where plaintiff did not download or try to use defendant's smartphone application but had heard from multiple people that they had used the application and found defendant's service inaccessible).

Second, at the time the plaintiff filed her complaint in January 2019, it was not reasonable to infer that any alleged discriminatory treatment would continue. Between December 2018 and at

9

least September 2019, "the substantive content, language and sequencing of all relevant portions" of the defendant's website "remained the same . . . ." Spry Decl. ¶ 5. Because the defendant's website invited prospective guests to inquire about accessibility and the possibility of additional assistance, the more reasonable inference to be drawn was that any discrimination inflicted by the outside-food prohibition would end when the defendant received and responded to a request for a reasonable accommodation.

Third, when the plaintiff filed the complaint, it was not reasonable to infer that she intended to return to—or visit in the first place—the defendant's theater. The plaintiff alleged that she "intends to take advantage of the facilities offered by Defendant in the future once the access barriers are remedied" and "intends to attend a similar event at the [defendant's theater] as soon as Defendant fixes its discriminatory policies." Compl. ¶¶ 12, 24. This broad allegation is not enough to raise a reasonable inference that she intended to visit the defendant's theater in the future. *See Stone Equities*, 2018 WL 1115135, at *11 (finding no plausible intent to return when complaint merely stated that plaintiff planned to return to defendant's property once defendant corrected access barriers, so that he could avail himself of defendant's goods and services and assess whether property complied with ADA). Under *Kreisler*, this element of constitutional standing under the ADA turns on "the past frequency of plaintiff's visits and the proximity of defendant['s establishment] to plaintiff's home . . . ." 731 F.3d at 188. Here, the plaintiff has not alleged that she made any past visits to the defendant's theater. She stated that she "did not attempt to attend an event" at the defendant's theater "because she understood Defendant's discriminatory policy and knew that such an attempt would be futile." Compl. ¶ 47; *cf. Camarillo*, 518 F. 3d at 156, 158 (finding it reasonable to infer that plaintiff intended to return to defendant's restaurants when she had visited each of defendant's restaurants multiple times). Nor is the theater in close proximity to

the plaintiff's home, as she resides in Kings County, New York, and the theater is located in Boston, Massachusetts. Compl. ¶¶ 21, 25; *cf. Kreisler*, 731 F.3d at 188 (drawing reasonable inference that plaintiff would visit restaurant if violation were fixed when plaintiff lived within several blocks of restaurant).

*Stone Equities* takes into account two additional factors when assessing a plaintiff's intent to return to the defendant's establishment; here, an application of those factors further reveals that it is not reasonable to infer that the plaintiff intended to visit the defendant's theater. *See Stone Equities*, 2018 WL 1115135, at *11. First, *Stone Equities* considers "the definitiveness of plaintiff's plans" to visit the defendant's property. *Id.* (quoting *Shariff*, 2013 WL 5519978, at *3). Here, the plaintiff's claimed intention to attend a "similar event" at the defendant's theater is vague and not definitive. Compl. ¶ 24. Second, *Stone Equities* considers the frequency of the plaintiff's travel near the defendant. *See* 2018 WL 1115135, at *11 (citing *Shariff*, 2013 WL 5519978, at *3). The plaintiff here has not alleged that she ever travels to the area near the defendant's Boston, Massachusetts theater. *Cf. Harty v. Simon Prop. Grp., L.P.*, 428 F. App'x 69, 71–72 (2d Cir. 2011) (finding plausible inference that plaintiff would likely return to defendant's property when plaintiff alleged he was former resident of state where property was located, visited the area often to see family, and planned to attend upcoming gun shows in the area); *Feltzin v. 183 South Wellwood Ave. Corp.*, No. 16-cv-5387 (ADS)(GRB), 2017 WL 6994213, at *3–*4 (E.D.N.Y. Oct. 25, 2017) (finding plausible allegation of plan to return to defendant's facility when, even though plaintiff lived in Florida and facility was in New York, plaintiff grew up in same county as facility, regularly visited friends and family in the area, and stated he would visit within ninety days of removal of barriers); *Shariff*, 2013 WL 5519978, at *3 (finding plausible intent to return to defendant's shopping center when plaintiff used train station on same block).

Thus, as supported by the unrefuted evidence that the defendant submitted, the plaintiff lacks standing. Because the plaintiff lacks standing, I lack subject matter jurisdiction, and I do not decide whether the plaintiff has failed to state a claim.

**II.     Because I lack subject matter jurisdiction over the plaintiff's ADA claim, I also lack subject matter jurisdiction over her claims under state and city law.**

While the parties did not address the resolution of the plaintiff's state- and city-law claims in detail in their briefing, I must dismiss those claims if "at any time" I determine that I lack subject matter jurisdiction over the suit. Fed. R. Civ. P. 12(h)(3).

Because the plaintiff lacks standing to bring her ADA claim, she also lacks standing to bring her claims under state and city law. *See Mendez v. Apple Inc.*, No. 18 Civ. 7550 (LAP), 2019 WL 2611168, at *1, *4 (S.D.N.Y. Mar. 28, 2019) (dismissing claims under same state and city provisions because plaintiff lacked standing under ADA, and state and city claims were governed by same standing doctrine). The Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) (2018)—which the plaintiff cites in her complaint as an alleged basis for jurisdiction, *see* Compl. ¶ 19(B)—does not remedy the plaintiff's lack of standing, *see Weinstein v. Trump*, No. 17 Civ. 1018 (GBD), 2017 WL 6544635, at *4 n.4 ("CAFA . . . neither remedies a plaintiff's lack of standing nor provides an independent basis for standing."); *see also Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) ("The rule that a removed case in which the plaintiff lacks Article III standing must be remanded to state court under [28 U.S.C. ]§ 1447(c) applies as well to a case removed pursuant to CAFA as to any other type of removed case."); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1033 (8th Cir. 2014) ("We therefore hold CAFA does not purport to extend federal jurisdiction to state claims—if any exist—permitting recovery for bare statutory violations without any evidence the plaintiffs personally suffered a real, non-speculative injury in fact."); *Carter v. CIOX Health, LLC*, 260 F. Supp. 3d 277, 286–88 (W.D.N.Y. 2017)

(finding district court had jurisdiction under CAFA but plaintiffs lacked standing for injunctive relief because they did not satisfy constitutional test by showing likelihood of future harm).

Thus, I lack subject matter jurisdiction over all of the plaintiff's claims. Because amending the complaint would not cure this deficiency, I dismiss this action in its entirety without leave to re-plead. *See Donnelly v. United States*, 550 F. App'x 54, 55 (2d Cir. 2014) (summary order).

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss is granted. All of the plaintiff's claims are dismissed. The Clerk of Court is directed to enter judgment accordingly and close the case.

SO ORDERED.

                _____/s/_____
                Allyne R. Ross
                United States District Judge


Dated:   November 14, 2019
       Brooklyn, New York